**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

KEVIN BROWN, STEVEN LAMB, and CHRIS BERTRAND,

        Plaintiffs/
        Counterclaim Defendants,

        v.

COURT SQUARE CAPITAL MANAGEMENT, L.P., COURT SQUARE CAPITAL GP, LLC, and COURT SQUARE CAPITAL GP III, LLC,

        Defendants/
        Counterclaim Plaintiffs.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2021-0262-KSJM

### ORDER RESOLVING KEVIN BROWN'S MOTION TO DISMISS COUNTERCLAIMS[1]

1. The plaintiffs are former employees of Court Square Capital Management LP ("Court Square"), a private equity firm. When they worked for Court Square, they were granted membership interests in two funds managed by Court Square—Court Square Capital GP, LLC ("Fund II"), and Court Square Capital GP III, LLC ("Fund III" and, together with Fund II, the "Funds"). The movant, plaintiff Kevin Brown, is a member of both Funds. His co-plaintiffs, Chris Bertrand and Steven Lamb, are members of Fund III only.

---

[1] The facts are drawn from the Verified Counterclaims and documents they incorporate by reference. C.A. No. 2021-0262-KSJM, Docket ("Dkt.") 14, Answer and Verified Counterclaims ("Countercl.").

2.     The Funds are governed by substantively identical LLC Agreements (the "LLC Agreements").[2]  The LLC Agreements entitle members to "Carried Interest," or "distributions of cash and/or cash securities," even after they leave Court Square.[3]  The LLC Agreements impose non-compete and non-solicitation obligations on members for a period of one year after their departure from Court Square.  The LLC Agreements also impose confidentiality obligations on members for an unlimited duration.

3.     Brown left Court Square and joined a competitor on June 3, 2016.  In connection with his departure, he signed a separation agreement dated August 17, 2016 (the "Separation Agreement").[4]  In the Separation Agreement, Brown acknowledged his post-termination obligations contained in the LLC Agreements.  In a "Deal Sheet," the Separation Agreement specifically identified certain investment opportunities that Brown was foreclosed from pursuing.  The Separation Agreement required Brown to cooperate and to provide assistance to Court Square "as reasonably requested from time to time."[5]

4.     A year and two weeks after Brown's departure from Court Square, on June 19, 2017, Brown's new employer announced that it had entered into an agreement to acquire a company called "Hayward," which was one of the companies identified in the Deal Sheet.  The press release also announced that Brown ran lead on the transaction.

---

[2] *See* Dkt. 21, Ex. A (Fund II LLC Agr.); Dkt. 21, Ex. B ("Fund III LLC Agr.).

[3] Fund II LLC Agr. § 3.1(a); Fund III LLC Agr. § 3.1(a).

[4] Dkt. 26, Ex. A (Separation Agr.).

[5] *Id.* ¶ 19.

5. Bertrand left Court Square in March 2019. Lamb left Court Square in July 2020. Each went to work with Brown.

6. Brown received Carried Interest payments from Court Square for years after his departure, including after the announcement of the Hayward transaction, but Court Square stopped making those payments to Brown in late 2020, after Lamb's departure.

7. In the fall of 2020, Court Square's Managing Director, Michael Delaney, exchanged letters with each of the plaintiffs. In a September 2020 letter to Brown, Delaney claimed that Brown might have "violated his obligations in connection with the acquisition of Hayward" and requested information from Brown.[6] Brown responded to the letters, but not to the defendants' satisfaction. In his response to Delaney's first letter, Brown stated that "[he] did not acquire any interest in the Company or any of its affiliates during [his] one-year restriction period."[7]

8. Following additional letter exchanges with Delaney, on March 26, 2021, the plaintiffs filed this suit to recover the Carried Interest payments. In Count I of the Complaint, Brown claims that Court Square and Fund II breached the Fund II LLC Agreement. In Count II of the Complaint, the plaintiffs claim that Court Square and Fund III breached the Fund III LLC Agreement.

9. The defendants answered the Complaint and filed Counterclaims on May 13, 2021. In the First Counterclaim, the defendants assert that the plaintiffs violated non-

---

[6] Countercl. ¶ 14.

[7] *Id.* ¶ 15 (quoting Brown's September 2020 response letter). The court has not been provided with the letter exchange between Delaney and Brown.

compete, non-solicitation, and confidentiality obligations under the Fund III LLC Agreement, and that Brown violated the same obligations under the Fund II LLC Agreement. The defendants seek damages for those breaches and a finding that all "[C]arried [I]nterest and other benefits received as a result of their breaches be forfeited and paid to" the defendants.[8] In the Second Counterclaim, the defendants seek a declaration that the breaches asserted in the First Counterclaim eliminate the defendants' obligations to make Carried Interest payments under the LLC Agreements going forward.

10. Brown moved to dismiss the Counterclaims pursuant to Court of Chancery Rule 12(b)(6).[9] The parties fully briefed the motion, and the court held oral argument on December 8, 2021.[10]

11. Under Rule 12(b)(6), "the governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[11] When considering a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[12] The court, however, need not "accept

---

[8] *Id.* ¶ 54.

[9] Dkt. 15.

[10] Dkt. 50.

[11] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[12] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

4

conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[13]

12. Brown argues first that the Counterclaims are time-barred under the doctrine of laches and second that they fail to state a claim.

13. Brown prevails on some of his arguments—the court finds that portions of the First Counterclaim are time-barred and that the defendants failed to state a claim for breach of Paragraph 19 of the Separation Agreement. But the defendants' claims as to the Carried Interest payments made or due within the limitations period, and due going forward, are both timely and adequately alleged.

14. Turning to the laches argument, a three-year statute of limitations applies to breach-of-contract claims absent tolling.[14] In this case, that limitations period extends back three years from the filing of the Counterclaims, to May 13, 2018.[15] Although "[s]tatutes of limitations traditionally do not apply directly to actions in equity, . . . courts of equity may apply them by analogy in determining whether a plaintiff should be time-barred under the equitable doctrine of laches."[16] A cause of action for breach of contract accrues "at the

---

[13] *Price v. E.I. DuPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018).

[14] 10 *Del. C.* § 8106(a).

[15] In this case, the limitations period attaches to when the counterclaims were filed and not when the complaint was filed. *Coit Cap. SEC, LLC v. Turbine Asset Hldgs., LLC*, 2019 WL 3949800, at *10–11 (Del. Super. Ct. Aug. 21, 2019).

[16] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 975 (Del. Ch. 2016). The parties dispute whether laches, as opposed to the statute of limitations, applies to equitable claims or to all

time the contract is broken, not at the time when actual damage results or is ascertained."[17] "Delaware's statute of limitations for contract claims begins to run on the date of the breach, regardless of whether the plaintiff is ignorant of the cause of action."[18]

15. For the purposes of this analysis, the factual bases for the defendants' breach of contract claim can be grouped into three categories. The first relates to whether the Hayward transaction constituted a breach of Brown's non-compete obligations. The second centers on Brown's entitlement to or receipts of Carried Interest payments within the limitations period and going forward. The third concerns Brown's alleged lack of cooperation in response to Delaney's letters.

16. The facts in the first category all predate May 13, 2018. The defendants allege that Brown "terminated his employment with Court Square on June 3, 2016," and thereafter "joined another private equity firm."[19] Within the next year, Brown allegedly advised his new employer on the Hayward transaction. And Brown's involvement in the Hayward deal was made public "two weeks after the one year anniversary of his departure from Court Square," on June 19, 2017.[20] Based on these facts, Brown argues that the three-

---

claims brought in a court of equity. Because both arguments result in the same conclusion, this Order does not waste time resolving the dispute.

[17] *Worrel v. Farmers Bank of State of Del.*, 430 A.2d 469, 472 (Del. 1981) (citations omitted); *see also Smith v. Mattia*, 2010 WL 412030, at *3 (Del. Ch. Feb. 1, 2010).

[18] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 WL 3201139, at *17 (Del. Ch. Aug. 7, 2012) (citing *SmithKline Beecham Pharms. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000)).

[19] Countercl. ¶ 5.

[20] *Id.* ¶ 9.

year limitations period on the defendants' counterclaims expired on June 19, 2020, at the latest. Because the defendants waited another year to assert the Counterclaims—filing them on May 13, 2021—Brown contends that they should be dismissed as time-barred.

17. In response, the defendants argue that two tolling doctrines apply. The defendants say that their claims against Brown are one, "inherently unknowable" and, two, should be "equitably tolled." The inherently-unknowable-injury doctrine tolls the limitations period only where it would be "practically impossible for a plaintiff to discover the existence of a cause of action."[21] The equitable-tolling doctrine tolls a limitations period "on claims for wrongful self-dealing when 'a plaintiff reasonably relies on the competence and good faith of a fiduciary.'"[22] A limitations period will only be equitably tolled until "the plaintiff is put on inquiry notice," which is "the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong."[23]

18. One fact defeats both tolling arguments—the Hayward transaction, along with Brown's alleged role in the process, was publicly disclosed on June 19, 2017. The defendants cannot show that it was practically impossible to discover a publicly disclosed fact. And the defendants should have been aware of the facts giving rise to the alleged wrong by virtue of the public disclosure, especially given that Hayward was one of just a few investment opportunities listed on the Deal Sheet.

---

[21] *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007).

[22] *Buerger v. Apfel*, 2012 WL 893163, at *4 (Del. Ch. Mar. 15, 2012) (quoting *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008)).

[23] *In re Tyson Foods, Inc.*, 919 A.2d at 585 (citing *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998)).

19.     Despite this infirmity, defendants urge the court to allow discovery into their tolling theories.  Presumably, however, discovery would target the defendants' subjective state of mind.  What good would that do?  It would not show that knowledge was impossible, as required by the inherently unknowable doctrine.  And the standard for equitable tolling is objective; it looks to whether the defendants should have been aware of the Hayward transaction upon its public disclosure even if they subjectively were not.[24]

20.     Accordingly, any claim seeking relief for Brown's alleged breach of contract before May 13, 2018, is time-barred.  This includes any claim for damages or disgorgement arising from the Hayward transaction.

21.     The second category of facts concern Brown's receipt of or entitlement to Carried Interest payments after May 13, 2018 and going forward.  Brown argues that any claim for recoupment of or damages amounting to Carried Interest payments too is time-barred because such claims are premised on Brown's pre-May 13, 2018 actions.  The defendants contend that, at the very least, they are entitled to pursue claims concerning the Carried Interest payments made before the limitations period expired.

---

[24] *Id.* (stating that "no theory will toll the statute beyond the point where the plaintiff was *objectively* aware, or should have been aware, of facts giving rise to the wrong" (emphasis added) (citation omitted)); *see also Barbosa v. Bob's Canine Acad., Inc.*, 2017 WL 2492042, at *7 (Del. Ch. May 19, 2017) (observing that "[a] court of equity will not overlook staleness in a claim where it appears that plaintiff's delay in seeking relief is sought to be excused on claimed lack of knowledge, where such lack of knowledge is actually due to culpable neglect" (citation omitted)); *AM Gen. Hldgs. LLC v. The Renco Gp., Inc.*, 2016 WL 4440476, at *13 (Del. Ch. Aug. 22, 2016) (rejecting tolling argument where "the facts at the heart of the claim [were not] so hidden that a reasonable plaintiff could not timely discover them" (internal quotation marks and citation omitted)).

22. The defendants' argument has two parts. First, they contend that Brown's compliance with the non-compete covenant was a condition to his right to receive Carried Interest payments. That is a fair reading of Section 5.8(b) of the LLC Agreements. The Fund II LLC Agreement provides that "if any Terminated Member breaches any of the covenants set forth in Section 5.14(a) or Section 5.14(b) (whether such breach occurred prior to, on or after such Terminated Member's Termination Date), such Terminated Member's Vested Carried Interest Points shall be" reduced accordingly.[25] The Fund III LLC Agreement provides that "if any Terminated Member breaches any of the covenants set forth in Section 5.14 (whether such breach occurred prior to, on or after such Terminated Member's Termination Date), such Terminated Member's Vested Carried Interest Points shall be equal to zero."[26]

23. Second, the defendants contend that their cause of action related to the Carried Interest payments accrues when each payment comes due.[27] The defendants rely on *Walpole v. Walls*.[28] There, Walls agreed to pay off Walpole's second mortgage in installments. Walls stopped making the payments, and Walpole later sued Walls for breach of contract more than three years after Walls stopped making payments. The court rejected the argument that Walpole's claims were time-barred, finding that "limitations on lawsuits for breach of installment payment contracts accrue with respect to each installment only

---

[25] Fund II LLC Agr. § 5.8(b).

[26] Fund III LLC Agr. § 5.8(b).

[27] Dkt. 26 ("Defs.' Answering Br.") at 16.

[28] 2003 WL 22931330 (Del. Com. Pl. July 8, 2003).

from the time the installment becomes due."[29] The court thus found that Walpole's claim for breach in connection with the payments made within three years before the filing of the complaint were timely.

24.     In this case, Brown's right to Carried Interest payments is somewhat analogous to Walpole's right to mortgage payments—a single contract governed Brown's right to payments due at intervals. Accordingly, it is reasonably conceivable that the defendants' cause of action in connection with each Carried Interest payment accrues at the time that the Carried Interest payment comes due.[30] Thus, the defendants' claims as to the Carried Interest payments made or due on or after May 13, 2018, are not dismissed on the basis of laches.[31] This means that the defendants may continue to litigate the question of whether Brown's conduct in connection with Hayward constituted a breach affecting his entitlement to these payments.[32]

---

[29] *Id.* at \*2 (citing *Worrel v. Farmers Bank of the State of Del.,* 430 A.2d 469, 476 (Del. 1981)).

[30] Brown argues, and it is true, that the LLC Agreements are not installment contracts, but Brown fails to explain why the logic of *Walpole* does not translate to the LLC context. At the very least, Brown fails to carry his burden of demonstrating that the law favors his position. At the pleading stage, that is a sufficient basis to deny Brown's motion.

[31] Given this holding, the court does not address arguments made under the recoupment doctrine. *See* Defs.' Answering Br. at 19–22.

[32] Brown argues that the restrictive covenants do not apply to the Hayward transaction. The LLC Agreements do not prohibit former employees from working on all private equity transactions; rather, the "Agreements apply only if the investment opportunity 'could reasonably be construed as a potential investment in a Portfolio Company.'" Dkt. 21, Brown's Opening Br. at 15 (quoting the LLC Agreements). Because the defendants do not expressly allege that Court Square was actively considering investing in Hayward, Brown contends that the defendants have not adequately alleged a breach in connection with the Hayward transaction. But the Deal Sheet specifically identified Hayward as a prohibited potential investment. At the pleading stage, this fact supports a reasonable inference that

25.     The third category of facts centers on Brown's alleged failure to cooperate in response to Delaney's September 2020 and December 2020 letters.[33] Those letters were sent to acquire "a very limited amount of information to allow [Court Square] to further assess" Brown's alleged "violat[ion] [of] his obligations in connection with the acquisition of Hayward."[34] If adequately alleged, this claim is timely. The claim, however, is not adequately alleged.

26.     For starters, the contractual obligation implicated by this argument is found in Paragraph 19 of the Separation Agreement. The defendants, however, did not adequately allege a claim for breach of the Separation Agreement. Although they reference the Separation Agreement and 2020 letter exchange in the background of their counterclaims, they do not include the Separation Agreement among the contracts identified in the First Counterclaim and Second Counterclaim. While sometimes such a failure is excusable, in this case it meant that Brown was not on notice of this claim. For this reason alone, the defendants have failed to state a claim for breach of the Separation Agreement.

---

Hayward could reasonably be construed as a potential investment under the governing agreements. Brown asserts a variety of other arguments challenging the sufficiency of the defendants' allegation of breach in connection with the Hayward transaction. I have studied the parties respective briefing on these issues and find the defendants' arguments compelling. *See* Defs.' Answering Br. at 23–32. I adopt them as if fully set out in this Order.

[33] Dkt. 49 at 2 ("The Court should reject Court Square's belated and improper attempt to add a new counterclaim through briefing or oral argument."); Dkt. 51 at 2 ("Because the Separation Agreement undisputedly conditions Brown's receipt of carried interest upon compliance with his restrictive covenants, Plaintiff clearly is on notice of the issue.").

[34] Countercl. ¶ 14.

27. There is another reason that the defendants' claim under the Separation Agreement fails—the defendants failed to adequately allege breach. Paragraph 19 of the Separation Agreement requires Brown

> to fully cooperate with, and to provide your assistance to, Court Square as reasonably requested from time to time by Court Square, including with respect to (i) the transition of any matters in respect of Fund I, Fund II, Fund III or their respective portfolio companies and (ii) meetings and consultants or employees of Court Square whose responsibilities including the maintenance of existing investor relations and other fundraising activities.[35]

Romanettes (i) and (ii) are not at issue, so the defendants rely on the general "fully cooperate" and "provide assistance to" language.

28. In briefing, the defendants make no effort to explain how Brown allegedly breached these obligations. They argue, in conclusory fashion, that "[i]n September 2020, Court Square, pursuant to [Paragraph 19] sought limited information from Brown concerning his compliance with his obligations in that Separation Agreement, information which he refused to provide."[36]

29. The defendants' own allegations, however, reflect that Brown responded to Delaney's letters, answering specific questions raised, and otherwise disclaiming that he breached his contractual obligations. The defendants do not like Brown's responses. But that does not mean that he failed to cooperate or provide assistance to the defendants.

---

[35] Separation Agr. ¶ 19.

[36] Defs.' Answering Br. at 22.

Given the paucity of the defendants' allegations and argument on this topic, their claim for breach of the cooperation obligations in the Separation Agreement is dismissed.

30.     For the foregoing reasons, Brown's motion to dismiss Counterclaim I is GRANTED in part and DENIED in part as set forth above.  Brown's motion to dismiss Counterclaim II is DENIED.  Any counterclaim for breach of the cooperation obligations in the Separation Agreement is DISMISSED.


                                        /s/  Kathaleen St. J. McCormick
                                        Chancellor Kathaleen St. J. McCormick
                                        Dated: March 22, 2022